IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA

        Plaintiff,

Vs.                      No. 07-40117-01-SAC

JAMES NELSON FULTON,

        Defendant.

### MEMORANDUM AND ORDER

This case comes before the court on defendant's motion for judgment of acquittal notwithstanding the verdict, apparently made pursuant to Fed. R. Crim. Pro. 29 (c). Defendant contends that his defense of entrapment compels a not guilty verdict. The government has not responded to the motion.

**Standards for judgment of acquittal**

When the jury returns a verdict of guilty, the court may, upon motion, set aside the verdict and enter a judgment of acquittal. Fed.R.Crim.Pro. 29 (c). When the sufficiency of the supporting evidence is challenged, the court must examine the evidence in the light most favorable to the

prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see United States v. Bailey*, 327 F.3d 1131, 1140 (10th Cir.2003). In reviewing the sufficiency of the evidence, the court must consider the direct and circumstantial evidence, as well as the reasonable inferences to be drawn from that evidence. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir.1993) (citing *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir.), *cert. denied*, 498 U.S. 874 (1990)). The court must accept the jury's resolution of conflicting evidence, as well as the jury's apparent credibility calls. *Davis*, 1 F.3d at 1017 (citing *United States v. Youngpeter*, 986 F.2d 349, 352 (10th Cir .1993)). " '[T]he evidence presented to support the conviction must be substantial; ... it must do more than raise a mere suspicion of guilt.' " *United States v. Torres*, 53 F.3d 1129, 1133-34 (10th Cir.) (quoting *United States v. Sanders*, 928 F.2d 940, 944 (10th Cir.), *cert. denied*, 502 U.S. 845 (1991)), *cert. denied*, 515 U.S. 1152 (1995).

**Analysis**

At trial, defendant's sole theory of defense was entrapment. He did not contest having committed the other elements of the charged offenses.

Defendant submitted an entrapment instruction, and the court, believing that sufficient evidence had been presented to create a jury issue as to entrapment, gave an entrapment instruction. Neither party objected to the court's giving an entrapment instruction, or to the elements instructions which required the jury to find that the defendant was not entrapped as to each count. The jury returned a verdict which found defendant guilty as charged, rejecting the entrapment defense.

Defendant's motion asks the court only to "enter a verdict of not guilty" on behalf of the defendant. It does not clarify whether he is arguing that he was entrapped as a matter of law, or whether he is arguing that the evidence was insufficient to prove defendant was not entrapped. In an abundance of caution, the court shall address both potential claims.

The entrapment defense is intended to prevent the government from conceiving of criminal schemes and then deliberately inducing people who are not otherwise predisposed to commit such crimes to participate in the criminal activity with the purpose of then prosecuting them. *Sherman v. United States*, 356 U.S. 369, 372 (1958). This does not mean that officers or employees of the government are prohibited from "afford[ing] opportunities or facilities for the commission of the offense," or that

"[a]rtifice and stratagem may [not] be employed to catch those engaged in criminal enterprises." *Sorrells v. United States*, 287 U.S. 435, 441 (1932).

The elements and burdens of proof in entrapment cases are clear.

> There are two elements to the entrapment defense: "The defendant must have been induced to commit the offense by government agents, and the defendant must not have been otherwise predisposed to do so when presented with the opportunity." *United States v. Madrigal*, 43 F.3d 1367, 1369 (10th Cir.1994) (citing *United States v. Fadel*, 844 F.2d 1425, 1429 (10th Cir.1988)). Once a defendant has presented sufficient evidence to put the affirmative defense of entrapment at issue, " 'the prosecution has the burden of proving, beyond a reasonable doubt, that a defendant was not entrapped.' " *Id.* (quoting *United States v. Young*, 954 F.2d 614, 616 (10th Cir.1992)).

*United States v. Duran*, 133 F.3d 1324, 1330 (10th Cir.1998).

Entrapment as a matter of law is rarely found.

> Entrapment as a matter of law exists only where there is undisputed testimony which shows conclusively and unmistakably that an *otherwise innocent person* was induced to commit the act complained of by the trickery, persuasion or fraud of a government agent." *United States v. Gurule*, 522 F.2d 20, 23 (10th Cir.1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976) (emphasis in the original).

*United States v. Cantwell*, 806 F.2d 1463, 1468 (10th Cir.1986).

"The question of entrapment is generally one for the jury, rather than for the court." *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 886 (1988).

4

> "The factfinder is traditionally in the better position to evaluate conflicting evidence and determine credibility"; and, therefore, conflicting evidence as to a defendant's predisposition precludes a finding of entrapment as a matter of law. *United States v. Madrigal*, 43 F.3d 1367, 1370 (10th Cir.1994), *cert. denied*, 514 U.S. 1089, 115 S.Ct. 1808, 131 L.Ed.2d 733 (1995). Entrapment as a matter of law exists only when there is undisputed evidence " 'which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the act.' " *Id.* at 1369 (citation omitted) (quoting *United States v. Gurule*, 522 F.2d 20, 23 (10th Cir.1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976)).

*United States v. Lampley*, 127 F.3d 1231, 1242 -1243 (10th Cir.1997), *cert. denied*, 522 U.S. 1137 (1998). *See United States v. Garcia*, 182 F.3d 1165, 1168 (10th Cir.), *cert. denied*, 528 U.S. 987 (1999). Deference to the factfinder is particularly important in the context of the entrapment defense because the determination "becomes so intertwined with the issue of intent and so 'typically based upon credibility determinations.' " *United States v. Madrigal*, 43 F.3d 1367, 1370 (10th Cir.1994), quoting *United States v. Dozal-Bencomo*, 952 F.2d 1246, 1250 (10th Cir.1991), *cert. denied*, 514 U.S. 1089 (1995).

The court first asks whether the evidence of entrapment is undisputed. This entails an analysis of defendant's predisposition. "Predisposition to commit a criminal act may be shown by evidence of similar prior illegal acts or it may be inferred from defendant's desire for

profit, his eagerness to participate in the transaction, his ready response to the government's inducement offer, or his demonstrated knowledge or experience in the criminal activity." *United States v. Duran*, 133 F.3d 1324, 1335 (10th Cir.1998) (internal quotations and citations omitted). Although predisposition is viewed at the time the government agent first approached the defendant, inferences about that predisposition may be drawn from events occurring after the two parties came into contact. *Garcia,* 182 F.3d at 1169, citing *Duran*, 133 F.3d at 1336; *United States v. Mendoza-Salgado*, 964 F.2d 993, 1003 (10th Cir.1992).

Here, disputed evidence was offered on the issue of defendant's predisposition, and the court cannot choose between conflicting witnesses or judge their credibility to find entrapment as a matter of law. *Compare Sherman v. United States*, 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958) (entrapment held established from undisputed testimony of prosecution witnesses). Although defendant's testimony, if believed by the jury, could have supported a finding of entrapment, contradictory evidence was presented. The defense of entrapment was a heavily contested issue during defendant's trial. "Entrapment will be found as a matter of law by a court only if all the elements of entrapment are uncontradicted. *Fadel*, 844

6

F.2d at 1430; *United States v. Ortiz*, 804 F.2d 1161, 1164 (10th Cir.1986)."*United States v. Young*, 954 F.2d 614, 616 (10th Cir.1992). Such is not the case here.

Accordingly, the court asks whether sufficient evidence exists to support the jury's verdict. *See United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). The evidence, "together with the reasonable inferences to be drawn therefrom-is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* "This court will overturn a "jury's rejection of the entrapment defense only if no reasonable jury could have found that the government proved ... beyond a reasonable doubt" that there was no entrapment. *United States v. Jenrette*, 744 F.2d 817, 822 (D.C.Cir.1984) (emphasis added), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985)." *United States v. Young*, 954 F.2d 614, 618 (10th Cir.1992).

Barber, a friend of defendant's from their time together in prison, worked as an informant in this case. Barber got out of jail in March of 2006 and had a number of contacts with defendant in April or May of 2006. Testimony was presented that the first time the defendant was contacted

by Barber, defendant told Barber he was not selling drugs anymore. The jury did not have to find that Barber was working as an agent of the government at that time, however. Testimony was given that Barber did not begin cooperating with the government as an informant until July 11, 2006. The jury was instructed that:

> For purposes of this case, Marcus Barber, the informant, acted as a government agent in connection with the crimes charged in this case. When he began acting as a government agent is a question for you to decide.

Dk. 33, Instr. No. 15.

Barber additionally testified that after he was released from jail, he saw defendant engage in criminal activity, saw defendant cooking dope, making crack cocaine, and possessing powder cocaine. Defendant's continuing involvement in the drug trade was the stated reason why Barber gave defendant's name to federal agents during Barber's plea or debriefing on July 11, 2006. Barber gave federal agents the names of other persons as well, and proved to be of substantial assistance to the government because his information was all corroborated and validated.

Barber testified to one specific drug transaction he witnessed, in addition to the charged offenses. Defendant picked him up at Barber's house on December 31, 2006, and drove to Kansas City, Kansas where he

entered "Shorty's" residence. Defendant returned to the car with 9 ounces of cocaine and told Barber that he had bought a "9 sack." Barber did not know that defendant was coming to his house or was going to buy cocaine, and his involvement in this transaction was as a mere observer. Defendant, not Barber, initiated this drug deal, and Barber did not alert federal agents to it because he himself did not know anything about it in advance. This event occurred approximately three months prior to the first charged offense.

Stukey testified that Barber never relayed to him defendant's comment that he was out of the game. Stukey testified that during his meeting with defendant when he posed as Barber's source, or "plug," he was testing defendant's willingness to participate in crime, and wanted to assure there was no entrapment.  He believed defendant showed his predisposition to commit the drug crimes in numerous ways: defendant embraced the plan with Barber's plug and never expressed to Stukey that he was not interested; defendant interrogated Stucky when he posed as Barber's drug source; defendant fluently and frequently used drug trafficking lingo; defendant was knowledgeable about the current price of drugs and the manner of moving drugs from one location to another;

defendant spoke of previous drug trafficking deals and of the supply and demand for drugs; defendant referred to his other drug sources and customers; defendant was able to get $18,000 quickly and get rid of the drugs quickly; defendant had prior contacts with law enforcement and with undercover agents; and defendant stated his suspicion that Stukey looked like an undercover agent. From Stukey's testimony, the jury could reasonably have found that defendant's criminal disposition was independent from and not the product of the attention that the government directed at him.

The jury also viewed the video and heard the audio tapes of the telephone calls and drug transactions, thus hearing first-hand defendant's facility with drug terminology and witnessing his demeanor, including his apparent eagerness to participate. The video tape shows defendant's surveillance of the smoke detector while apparently looking for hidden camera or microphones in the room, and defendant's turning up the volume on the television as though to drown out any audio recording of the meeting - acts the jury could find to be inconsistent with those usually done by an otherwise innocent person who had been induced to commit the act. The jury was aware of defendant's assertion that he was just putting on a show

for the "plug" throughout the taped event, and was justified in rejecting it.

The court has reviewed the record, resolving all issues of credibility in favor of the government, and finds ample evidence, some of which is summarized above, to warrant a reasonable jury in finding beyond a reasonable doubt that there was no entrapment.

IT IS THEREFORE ORDERED that defendant's motion for judgment of acquittal (Dk.37) is denied.

Dated this 15th day of April, 2008.

        s/ Sam A. Crow
        Sam A. Crow, U.S. District Senior Judge